### A. M. ALDEN *vs.* CITY OF MINNEAPOLIS.

#### October 29, 1877.

**Street Improvements—When Evidence Admissible as to Situation and Topography of Ground in its Natural State.**—When the fact in issue concerns the effect upon adjacent property of certain street improvements, made in conformity with an established grade, as respects the flow of surface water, the situation and topography of the ground in its natural state, prior to such improvements, is a proper subject of inquiry.

**Assumption, in Charge to Jury, of Fact Apparent from the Evidence.**—In charging a jury, the assumption by the court of the existence of a fact which is so clearly apparent, from the evidence, as to furnish no reasonable ground for dispute or controversy, affords no legal ground for alleging error.

**Liability of City for Damages Caused by Grading and Improving Streets.**—*Lee* v. *City of Minneapolis,* 22 Minn. 13, followed, in respect to the liability of defendant for damages occasioned by grading and improving its streets.

Plaintiff, who had occupied the basement of a building near the intersection of Nicollet and Third streets, in the city of Minneapolis, brought this action to recover damages for the alleged negligence of the defendant in establishing the grades of the said streets, and in the construction of the sewers, gutters and catch-basins thereon, whereby the surface waters flowed into the said basement, and destroyed the goods of the defendant stored therein. The cause was tried in the

district court for Hennepin county by *Vanderburgh,* J., and a jury. Under objection and exception, the court permitted the defendant, upon cross-examination, to question certain witnesses as to the character of the land in said locality, and also as to whether the water was not now drained off better than it was before there was any system of drainage, and as to whether the sewer on Nicollet street was not large enough for all practical purposes. Witnesses for the defendant were likewise permitted to testify that that section of the town was low; that portions of the year it was under water; and that before the grading was done the water would settle in Third street, run across Hennepin avenue, and finally settle down about Third and Nicollet streets.

In charging the jury the court, among other things, said: "The improvement of the public streets, under our municipal charter, is subject to the government of the common council, and independent of any special statute controlling the matter. Much is left to their discretion in reference to city improvements; in reference to the manner and time for introducing these improvements; when they will make sewers; the kind of sewers and gutters they will construct. Of course it is a matter for consideration by the governing power of the city, and in reference to these matters they act in a judicial character, exercising their judgment and discretion as to the time and manner of making such improvements. And if the improvements are made in pursuance of such judicial action on the part of the governing power, then the parties are without remedy as against the city for the mere non-action of council; that is, for any delay in making such improvements. Nor is the city liable for the reason that it may not determine upon the best system of improvements. One kind of improvements may be better than another; one kind of sewers may be better than others; still both might subserve purposes of drainage. There may be questions as to what would be the best kind or system of drainage; there may be questions as to the different size and shape of the sewers, and many other points of con-

sideration in the determination of such matters. I say considerations of this kind cannot be taken into account on the question of liability; I mean as a ground of liability for any error of judgment in this regard."

To which part of the charge the plaintiff specially excepted.

In adverting to the construction of a sewer on Nicollet street, the court also said: "It is claimed that there was a gutter on Nicollet street, and such as was ordinarily constructed. It is not claimed that they were the best gutters, neither that they were made with any great degree of skill or expense; still it is claimed that there was a certain system of drainage. It does no appear that these gutters were any the less effective by reason of the construction of the sewer. * * * * * * If one sewer is constructed with other smaller sewers, it might be a help to the drainage and render it more effective than it was before. Unless it was defective, or suffered to become obstructed in some way, then there could be no cause of action, because it was some improvement on what it was before. These small sewers did some good. The mere fact that they had not done all that they might have done, would afford in itself no ground of action, provided there was no negligence or fault in the matter of its repair, or the matter of its being kept free from obstructions, or any unskilfulness in its construction."

The court also read the following requests to the jury in behalf of the defendant:

1. That if the plan of surface-draining adopted and carried out by the city was as good as the topography of the ground will warrant, the city cannot be held liable for damages resulting from surface water.

2. That if the city has adopted as good a system of drainage as its finances will reasonably warrant, it cannot be held liable for not undergoing extraordinary expenses for making a better.

3. That the city cannot be held liable for an error of judg-

ment in not constructing a sewer of sufficient capacity to carry off all the surface water that may run into it.

4. That if the sewer on Nicollet street has not increased the quantity of surface water running into plaintiff's premises, plaintiff cannot recover on account of any defect of the sewer in the matter of its capacity to discharge water.

The court then further charged as follows: "On the other hand, bear in mind the distinctions that the court has intimated to you. If the jury should find that there was negligence on the part of the city, or want of repair in the sewers or gutters already made and constructed by them, or negligence in suffering them to become obstructed, and that by reason of such negligence damage has resulted to the plaintiff which you can connect with such negligence, then the plaintiff is entitled to recover."

Again, in alluding to an alleged cutting of a drain across Hennepin avenue, under the direction of the street commissioner, the court said: "The street commissioner,   \*   \*   \* doing acts of his own motion, such as the changing of the drains independent of the governing act of the city, which might result in turning water upon the premises of another party— this would be a matter of a different kind from the mere construction or making improvements, ordered and carried on by the city in regular course. This evidence, I suppose, has reference to the alleged cutting of a drain across Hennepin avenue. It was an act of the street commissioner. He changed the flow of water, according to his testimony, from that drain, where it went before, and took it through the center of the street, where the street railway was constructed. I think this would be placed upon different grounds of liability. Such an independent act of an officer as that, not in pursuance of the general plan of improvements, or the special improvements ordered by the city, if it should result in turning the water on plaintiff's premises, and he should be injured by it, and you so find, would be a ground of liability." This portion of the charge was likewise excepted to by plaintiff.

The plaintiff also excepted to each of defendant's requests, and the whole charge. The jury rendered a verdict for the defendant, and a motion for a new trial having been denied, the defendant appealed.

*Merrick & Gove;* for appellant.

The statement of the court that the gutters were none the less effective by reason of the construction of the sewer was not sustained by any evidence in the case.

The fourth request was immaterial to the issues in the case. *City of Dixon* v. *Baker,* 65 Ill. 518; S. C. 16 Amer. Rep. 591. It is true that under the charter (Sp. Laws 1874, p. 117) no action could be maintained against the city for refusing or omitting to construct sewers; but, having constructed sewers, the obligation was imperative upon the city not only to have them constructed properly, but to see that they were kept in good repair. *Barton* v. *City of Syracuse,* 37 Barb. 292; *Nims* v. *Troy,* 59 N. Y. 500; *Griffin* v. *New York,* 9 N. Y. 456; *McCarty* v. *Syracuse,* 46 N. Y. 194. The city was responsible for the condition of the sewer, and is liable for all damage sustained by the plaintiff, (*White Lead Co.* v. *Rochester,* 3 N. Y. 463; *Wendell* v. *City of Troy,* 4 Keyes 272;) the doctrine being well established by adjudicated cases that when a duty of a ministerial character is imposed by law upon a public officer or corporation a negligent omission to perform that duty creates a liability on the part of such officer or corporation; and such liability may be enforced by a civil action. *Adsit* v. *Brady,* 4 Hill, 630; *Robinson* v. *Chamberlain,* 34 N. Y. 389; *Hutson* v. *The Mayor,* 9 N. Y. 169; *Barton* v. *The City of Syracuse,* 36 N. Y. 54.

The act of the street commissioner, in excavating a ditch across Hennepin avenue, bound the city, and the law recognizes no such distinction as the court made in its charge. *Kobs* v. *City of Minneapolis,* 22 Minn. 159.

The verdict was so directly against the testimony as to warrant the court in setting it aside. *Gatlin* v. *Wilcox,* 26 Ark. 309; *Blosser* v. *Harshbarger,* 21 Gratt. 214; *Macy* v.

*Wheeler*, 30 N. Y. 231; *Hinton* v. *McNeil*, 5 Ohio, 509; *Hutchinson* v. *Coleman*, 5 Halst. 54; *Boyd* v. *Colt*, 20 How. Pr. 384; *Fisher* v. *Skut*, 21 Barb. 333; 3 Gra. & Wat. on New Trials, 1207; Hill. on New Trials, 355.

*E. M. Wilson*, for respondent, argued, in part, that a corporation was not liable for the insufficient size or want of capacity of gutters or sewers for the purpose intended, particularly if the adjoining property is not in any worse position than if no gutters or sewers whatever had been constructed, and cited *Wilson* v. *The Mayor*, 1 Denio, 595; and Dill. on Munic. Corp. § 801.

CORNELL, J. Under the issues, the situation and topography of the country immediately surrounding and including the premises in question, in its natural state, and at the time when the acts complained of were done, in reference to the flow of surface water, and the effect which the system of drainage adopted by the city, and the work done thereunder, had upon such flow, as respects the premises of plaintiff, were proper subjects of inquiry. The evidence, therefore, which was received on the trial under plaintiff's objections, the admission of which is now assigned as error, was not objectionable. The point made, that some of it was not pertinent on cross-examination, is no ground for setting aside the verdict, inasmuch as this was a matter in the discretion of the trial court.

The principal questions presented, however, relate to the legal effect of the whole evidence, which is before us, and the correctness of the instructions given to the jury and excepted to by the plaintiff. The errors assigned are upon such instructions, and the rulings of the court in its charge to the jury, and that the verdict upon the evidence is contrary to law.

The general power of the city over its streets, under its charter, including the right to determine and establish the grades thereof, to make improvements in conformity therewith, and to adopt and prosecute a plan and system of drainage and sewerage, for the benefit of the public, is unquestioned and conceded. Since, upon settled and familiar principles, all

questions concerning the conflict, weight and credibility of testimony, and what deductions, if reasonable, shall be drawn therefom, belong to the jury, and since the verdict must be sustained by the appellate court, if upon any reasonable theory of the evidence under the instructions it can be, in considering the question whether it is contrary to law we must assume that state of facts most favorable to the verdict which, under the charge, the jury was at liberty to find.

In view of these considerations, it must be assumed that the jury rightfully found substantially the following facts, in proof of which there was sufficient competent evidence : Third street is crossed nearly at right angles by Nicollet street, Hennepin avenue, and First avenue south. Near the intersection of Third and Nicollet, and on a lot fronting upon the latter, the store building occupied by plaintiff was situated. The grade of these and other streets in that vicinity was legally established in 1870 and 1871. Prior to any improvements at the locality of the lot in question, and the intersection of Nicollet and Third streets, "there was," according to the testimony of some of the witnesses, "a natural depression from all sides," the land being very low, so that portions of the year it was all under water, and "a pond" was formed, by the accumulation of surface waters, with no outlet. According to the natural topography of that section, the only feasible method for draining it and getting rid of these surface waters, without excessive expense, was that adopted by the city. This was, to make an outlet of Third street towards First avenue south, so far as the nature of the ground would admit, by means of gutters constructed on either side, and in addition thereto two sewers were to be constructed from Third street—one along Hennepin avenue, the other along Nicollet—connecting with a main sewer on Washington avenue, with catch-basins and connecting pipes at the corners of the streets, in order to carry off whatever waters the gutters were insufficient to convey. In carrying out this system of street drainage it was necessary to estab-

lish the grade line of Nicollet, along plaintiff's lot, at a height above its natural surface, and to fill in accordingly, as was done by the city. At the time the injuries complained of happened, the streets in that vicinity had been properly graded, the gutters built, and one of the sewers—that on Nicollet—had been constructed, and the connections made with the gutters at the corners on Third and Nicollet, by means of suitable pipes and catch-basins. The sewer on Hennepin had not then been built. In this condition of things "there was about the same amount of surface water collected in the vicinity of this lot from showers, as there was originally," before any improvements were made. The improvements as then made were sufficient to carry off, as fast as collected, all surface waters accumulating there during ordinary rains, but were inadequate in very violent and heavy showers, such as those occasioning the damage in this case. The construction since of the Hennepin sewer serves as an additional relief to the streets. There was no negligence or want of skill on the part of the defendant in the making of these improvements, or in keeping them in proper repair. The flooding which caused the injury was the result of unusual rains of great violence, which temporarily filled the streets in the vicinity of plaintiff's lot to the depth of some five or six inches in the center, and beyond the capacity of the gutters and catch-basins at once to drain. Plaintiff's store was built on a level with the established grade of the street, with a cellar or basement underneath, having front windows reaching below the sidewalk, and surrounded with areas inclosed in part with masonry and stone work, and partly with wooden frames. The sidewalk itself, which was built by the owner of the building, was nearly four inches below the established grade, and below what it should have been. It was over this sidewalk and through these windows that the water flowed which occasioned the damage of which plaintiff complains.

Upon this state of facts there was no liability against the

city. It had the right, as was its duty, to fix the grades of its streets, and to improve them accordingly, and wholly with reference to the public use and accommodation, and no right of action could accrue against it by reason of any consequential injuries resulting necessarily from the proper execution of this power. *Lee* v. *City of Minneapolis*, 22 Minn. 13. It was under no obligation, in establishing such grades and making such improvements, to conform them to the special necessities and requirements of plaintiff's abutting property, for the purpose of draining it, or preventing the accumulation upon it of mere surface waters. Its clear duty to the public required, as was done in this instance, the elevation of the grades of Nicollet and Third streets, through this low place of ground, to such a height and level above its natural surface as would make them fit and suitable for public use and travel, by keeping them properly drained of such surface waters as usually collected in that locality. If, thereby, plaintiff's lot was necessarily overflowed during heavy rains, to his injury, it was the misfortune of his situation in occupying premises thus naturally low, and his loss, if any, was *damnum absque injuria*. He had no legal claim upon the city for the construction of any sewer to serve either as a drain to his premises or as an additional relief to the streets themselves, and hence the omission to build the Hennepin avenue sewer furnished him no just ground for complaint. His proper, if not sole protection, consisted in raising his own lot above the grade line of the street, or in the erection of such walls and embankments as would have effectually prevented any flow upon him from the street. This he could lawfully have done, as he possessed the common law right of use and enjoyment, in respect to his lot, as fully and to the same extent as the city did in respect to its streets. Each had the right to use and improve, for any legitimate purpose, and in such manner as would protect against the incursion or accumulation of mere surface waters. *Barry* v. *City of Lowell*, 8 Allen, 127; *Franklin* v. *Fisk*, 13 Allen, 211; *Turner* v. *Dart-*

*mouth,* Id. 291; *Flagg* v. *Worcester,* 13 Gray, 601; *Wilson* v. *Mayor,* 1 Denio, 595; *Mills* v. *Brooklyn,* 32 N. Y. 489; *Imler* v. *Springfield,* 55 Mo. 119; *Hoyt* v. *City of Hudson,* 27 Wis. 656.

This case is entirely different from that of *Kobs* v. *The City of Minneapolis,* 22 Minn. 159, cited by appellant. There the injury was the direct result of a purely ministerial act, done carelessly and without any suitable precautions, whereby a large body of accumulated water was suddenly, and with destructive force, precipitated upon the premises of the defendant therein, to his injury. The facts of the two cases are as distinct as are the legal principles applicable to them.

Referring to the specific exceptions taken to portions of the charge, the statement that "it did not appear that the gutters were really any less effective after the sewer was constructed than before there was a sewer," in the sense intended and understood, as admitted by appellant, was upon the evidence literally true and open to no controversy. Its meaning, as thus understood and intended, was that the construction of the sewer had no effect to impair the efficiency of the gutters. The expression of this fact, thus apparent from the evidence, and open to no reasonable dispute, affords no legal ground for alleging error.

As to the drain cut by the street commissioner across Hennepin avenue, the court charged the jury that it was an act of the commissioner for which the city was responsible, and if they found any injury to plaintiff resulted from it, the defendant was liable. Whether this instruction was erroneous or not, plaintiff could avail himself of no objection to it, as it is evident the error, if any, was committed in his favor. None of the exceptions made were well taken, and the order denying a new trial is affirmed.