STEWART v. THE CITY OF CLINTON, *Appellant.*

1. **Municipal Corporation:** EXECUTION OF CORPORATE POWERS PLEADING. When a complaint against a municipal corporation relates to an act which can only be lawfully done under an ordinance of the corporation, an averment in the petition that the act was done by the corporation implies that it was done in pursuance of an ordinance.

2. ———: ———. Under the statute concerning Towns, (Wag. Stat., p. 1313, §§ 2, 7,) the power to open, grade and improve streets is conferred on the town board of trustees, and this power is to be exercised by ordinance and not otherwise. To hold a town liable therefore for the consequences of a change of grade, it is necessary to show that the grade was originally established by ordinance and the change was authorized by ordinance.

3. ———: PROOF OF ORDINANCE. Parol evidence is not admissible to show the existence of a town ordinance: the journal of proceedings of the board of trustees should be produced.

4. ———: LIABILITY FOR NEGLIGENT WORK. Where the plaintiff claimed damages from a municipal corporation for flooding his cellar by negligently grading a street and building a culvert too small to carry off the water, and it did not appear but that the grading was done and the culvert built in accordance with an ordinance of the city; *Held,* that the plaintiff showed no right of recovery.

5. ———: CHANGE OF GRADE: SURFACE WATER. A city, in changing the grade of a street, is not bound to provide ditches or other conduits for the surface water flowing along the street, so as to prevent it from running into the cellar of an abutting proprietor. Especially is this the case when the water can find its way into the cellar

only through a pipe laid into the street by the proprietor without leave.

6. **Damages, Proximate and Remote.** The trial court instructed the jury that if they should find for the plaintiff they should allow him such damages as they found from the evidence were "the immediate and natural consequence of the neglect of defendant." *Held*, error, because it left it to the jury to distinguish between proximate and remote damages.

*Appeal from Henry Circuit Court.*—Hon. F. P. WRIGHT, Judge.

REVERSED.

*S. B. Orem* for appellant.

*M. A. Fyke* for respondent.

PHILIPS, C.—The petition in this case alleges in substance that at and prior to 1875 the defendant was a municipal corporation organized under the general laws of the State by the corporate name of "The Inhabitants of the Town of Clinton," with certain powers, etc.; that in 1878 it reorganized under the law therefor as a city of the fourth class, and took the corporate name of "The City of Clinton." The petition then avers that on the — day of ——, 1875, "he was the owner of a certain lot in said city of Clinton, upon which was situated his dwelling house, under which was a basement or under-ground story; that at the time he constructed said basement story he also constructed a sewer or drain three feet under-ground, which drain or sewer led from said basement to the public street in front of his said dwelling; that at the time said sewer was constructed said street had been graded by defendant so that the surface thereof was below the sewer leading from plaintiff's basement, so that the water running along said street passed along and off without flowing into plaintiff's drain and thence into plaintiff's basement story; that afterward defendant raised the grade of said street in front of

plaintiff's said dwelling three or four feet and constructed a culvert across said street; that defendant, in raising the grade of said street and in constructing said culvert, so negligently, carelessly and unskillfully graded said street and constructed said culvert as to cause the water, or a portion thereof, which had theretofore flowed down said street and away from the same, to flow through plaintiff's drain into plaintiff's basement story; that after defendant had so constructed said culvert it negligently and carelessly suffered the same to become and remain choked and filled up and obstructed for the space of three years, so that all the water, which, but for the negligent acts of defendant, would have passed away from said street and plaintiff's premises, flowed through plaintiff's drain and into his basement, greatly injuring the same, to his damage in the sum of $500."

Defendant's answer denied generally the allegations of the petition, except it admitted the incorporation of defendant, but denied that "as such corporation it had any powers save such as were conferred by the general laws, and had no power to grade and improve its streets except by an ordinance duly passed and adopted by the board of aldermen, or that any agent, servant or employe of said town or corporation had any power to bind said town by any attempt to grade any street therein in the absence of an ordinance authorizing the same; averred that said town had never by its board of trustees passed any ordinance fixing a grade for said street in front of plaintiff's residence, or that it ever erected, constructed, or caused to be constructed, any sewer, as described in plaintiff's petition, under and across said street, and that if any person assumed to build or construct said sewer or grade said street by authority of said town it was wholly unauthorized by said town or its board of trustees, and defendant was not liable for injury or damage resulting therefrom; and further, that whatever damage plaintiff suffered by reason of said sewer being obstructed was caused by plaintiff's own carelessness in permitting the same, when it was in his own knowledge and power to pre-

vent the same at a small cost, and the damages resulting from such obstruction were allowed to accumulate, without any effort on his part to protect himself."

The reply denied the allegation of the answer touching the passage of said ordinance, and then averred that with or without an ordinance the town was liable.

The defendant objected to the introduction of any evidence under the petition because it did not state facts sufficient to constitute a cause of action, and because it did not show that the grading and work in question were authorized by any ordinance of the town trustees. The court admitted the evidence. The evidence in the case wholly failed to show that the said street had ever been graded by authority of the town officials prior to the time of the alleged change of the grade. Nor did the plaintiff introduce any evidence that the work in question was done pursuant to any ordinance passed by the trustees; while the defendant's evidence quite clearly established that no such ordinance had ever been adopted, or any resolution of the board of trustees directing the work to be done on the street.

The plaintiff's evidence tended to prove that the change made in the street in 1875 so elevated the street that it interfered with the escape of the water from the pipe which conducted the water from his cellar or basement room, as alleged in the petition; and that the culvert constructed by whoever did the work on the street was not large enough to carry off the volume of water on occasions of freshets or unusual accumulations of surface water, the consequence of which was that the water which did not find vent through this culvert ran into plaintiff's conduit pipes, and thence into his cellar, rendering it uninhabitable and perhaps unwholesome. His testimony tended also to show that the culvert at times became stopped up, which would cause the reflux of the water into his pipes. Defendant's testimony, after showing that there was no ordinance or resolution ever passed or adopted by the board of trustees

directing the work in question to be done, tended to prove that the grading of the street was properly executed, that it was a needful public improvement, and that the culvert was properly constructed and adequate for the passage of the water-flow through it. The evidence all tended to show that the water in question was from surface flow.

On behalf of plaintiff the court gave the following instruction : " If the jury believe from the evidence that plaintiff, about the time alleged in the petition, was the owner of the lot described in the petition, and that the said defendant, by its trustees, graded the street in front of plaintiff's lot and made a culvert across said street in front of said lot where there had been a pass-way for water across said street, and that at the time said work was done plaintiff had a drain from his basement to said street sufficient to drain said basement, and that defendant negligently constructed said culvert, and that said culvert became choked up and defendant was notified thereof and afterward negligently permitted the same to remain obstructed, and that by reason thereof the water was backed from said street through plaintiff's drain into his basement, without negligence on his part, and his basement was damaged thereby, you will find for plaintiff, and assess his damage at such sum as you may believe from the evidence he has sustained as the immediate and necessary consequence of said negligence, not exceeding $500, and in estimating the damages you should take into consideration all the facts and circumstances detailed in the evidence."

The defendant asked a number of instructions. The first asserted the proposition, in substance, that unless the work or change in the grade of the street and the culvert were authorized by an ordinance adopted by the board of trustees, and the work was unskillfully and negligently done, the plaintiff could not recover.

The second asserted that if the injury sustained by the plaintiff was caused by the flow of surface water alone, he could not recover.

The third declared that plaintiff could recover only for damages caused by the negligent execution of the work and the negligently allowing the culvert to become stopped, and that plaintiff is not entitled to recover for the loss of rents which he might have prevented by repairing the house.

The fourth declared that unless there was an ordinance of the board establishing the grade in the first instance, and then an ordinance directing the change of the grade so established, then the work done by the parties, whoever they were, could not be charged against the defendant.

The fifth told the jury that if the plaintiff could, at trifling expense and by reasonable exertion, have prevented the injury, he could not recover.

The court refused all these declarations, and then, of its own motion, gave the following:

1.  If the jury believe from the evidence that plaintiff could have prevented his basement from being damaged on account of a defect in the culvert leading from his drain across the street in front of his dwelling house at a trifling expense and by reasonable exertions, he cannot recover in this suit, and you will find for the defendant, provided the damage sustained, if any, was occasioned by his own negligence and not by the negligence of defendant.

2.  Though the jury should find for the plaintiff, in estimating the damage they will only assess such as they find from the evidence was the immediate and natural consequence of the negligence of the defendant, its agents or employes.

The jury found the issues for the plaintiff, and assessed his damage at $150. Defendant brings the case here by appeal.

The objection to the introduction of any evidence under the petition was properly overruled. The averment is,

1. MUNICIPAL CORPO-RATION: execution of corporate powers: pleading substantially, that the first grade of the street in question was established "by defendant." and that the change in the grade

and culvert were made "by defendant." This carried with it the implication that the work was ordered by the representative board of the corporation and in the manner provided by law; otherwise it could not have been done by defendant. "Things which are necessarily implied need not be alleged." Bliss Code Plead., § 175. The case of *Werth v. City of Springfield*, 78 Mo. 107, presented the same question. The court held that the allegation that it was done by "defendant" implied that it was done by the corporation in its legal capacity.

It follows logically, from this legal implication, that when it came to the matter of proof, to sustain this averment, it was essential for the plaintiff to show affirmatively that the acts in question were authorized by the defendant.

The defendant being a corporation, representing the body politic of the local community, who are to be affected and bound by the judgment, before the plaintiff may recover it is indispensable that the trustees should have directed the act. Being the creatures of the statute, they possess the power conferred on them by the creative act, no more nor less. This is axiomatic. At the time of the alleged injury, defendant being a municipal corporation constituted under the general statute of the State for the incorporation of towns, reference must be had to that instrument to ascertain the powers, functions and duties of the body corporate.

By section 2, (ch. 134, p. 1314, Wag. Stat.,) "The corporate powers and duties of every town so incorporated shall be invested in a board of trustees." Section 7 (p. 1317) contains a more special enumeration of the powers of the board. They shall "have power to pass by-laws and ordinances, to open and form drains and sewers and to keep the same clean and in order, and also to open, clean, regulate, grade, pave or improve the streets and alleys of such town." By section 20 (p. 1318) the chairman of the board shall cause to be printed and published the by-laws and or-

dinances of the board for information, etc.   From all this
it is manifest that whilst jurisdiction over the streets, to
open, grade and improve them, is conferred on the board
of trustees, the manner of exercising that jurisdiction is
just as clearly defined to be by ordinance and not other-
wise.   Unless, therefore, the acts complained of by plaintiff
were ordered by defendant through its board of trustees by
ordinance, it was not the act of the corporation, and this
for the obvious reason that the charter, which is the power
of attorney, clearly places the responsibility of grading and
improving streets on the town board, and the initiation of
such work, which would impose a burden upon the con-
stituency, is the exercise of sovereign authority, and should
therefore rest in the sound discretion of the governing au-
thority of the municipality.   *Ruggles v. Collier*, 43 Mo.
354; *Sheehan v. Gleeson*, 46 Mo. 100.

In *Saxton v. City of St. Joseph*, 60 Mo. 153, the court
adhered so inflexibly to this rule that although an ordi-
nance *pro forma* had been passed by the city council, under
which a contractor had macadamized a street of the city,
yet he was not permitted to hold the city for the work, be-
cause the mayor had not joined in the ordinance according
to the letter of the charter.   In *Thomson v. City of Boon-
ville*, 61 Mo. 282, this doctrine is re-affirmed.   The court
say :   " The charter is the power of attorney granting the
the authority, and the manner prescribed in it must be car-
ried out.   It required the passage of an ordinance—a leg-
islative act by the mayor and councilmen—to accomplish
the object, and that was a power that could not be delegated
or committed to other hands.   The grading, therefore, un-
der the assumed authority of the committee was done with-
out any legal justification."   In *Werth v. City of Spring-
field, supra*, the court say :   " The defendant can only be
held responsible for the acts of its officers, agents or serv-
ants, in changing the grade of a street, when such change
has been authorized by ordinance.   If the allegation in
question, (*i. e.*, that defendant changed the grade, etc.,)

should be denied, the plaintiff would have to introduce in evidence an ordinance authorizing a change in the grade in order to maintain his action against the city." The instructions therefore asked by defendant touching the necessity of such ordinances should have been given.

The only evidence offered by plaintiff bearing on this issue was the statement of the witness, Dr. Britts, who,

3. ——— : p r o o f o f
ordinance.
against the objection of defendant, testified that there was, he thought, an ordinance authorizing this work. This evidence was incompetent. By section 6 of the statute in question the board of trustees are required to " keep a journal of their proceedings ; and their proceedings shall be public." The acts and ordinances of such corporation are evidenced by the entries in such journal. 1 Dillon Munic. Corp., § 310; 1 Greenleaf Ev., (14 Ed.) § 86.

The petition, after the assumption that the street was first graded by defendant, and that established grade

4. ——— : liability for
negligent work.
changed by it, predicated the right of recovery on the propositions that the defendant was guilty of negligence and unskillfulness in executing the work, in grading the street, and in building the culvert, and in permitting the culvert to become choked up after it was built.

It is the well settled law of this State that where, by the provisions of the charter of municipal corporations granted prior to the adoption of the constitution of 1875, jurisdiction over the streets in the matter of graduation, etc., is conferred on its governing body, the corporation is not liable for damages resulting to an adjacent property owner from the establishment or alteration of the grade of the street. *City of St. Louis v. Gurno,* 12 Mo. 415 ; *Soulard v. City of St. Louis,* 36 Mo. 546 ; *Wegmann v. City of Jefferson,* 61 Mo. 55 ; *Broadwell v. Kansas City,* 75 Mo. 215, 216. If, however, the corporation, after having entered upon the performance of the work, so negligently and unskillfully executes it, that damage ensues therefrom to the adjoining

proprietor, it would be liable therefor. But an important distinction is to be observed between the negligent and unskillful executions of the plan devised and adopted by the board or council and the adoption by it of an imperfect plan or mode for accomplishing the improvement. As the latter is a legislative function, or, as sometimes designated by the courts, a *quasi* judicial act, based necessarily on the mere judgment and opinion of the legislative body, the constituency are not liable for any injury resulting from defects in the plan or scheme so devised. *Imler v. City of Springfield,* 55 Mo. 119 ; *Foster v. City of St. Louis,* 71 Mo. 157.

By reference to plaintiff's own statement in evidence, it is manifest that the injury complained of primarily resulted from the fact that the culvert was too small to carry off the volume of water that sought an outlet through it on occasions of unusual floods. Evidently then it was a defect in the plan. The presumption of law is that the agent or servant of the town constructed the culvert of the dimensions ordered or prescribed.

It is also manifest from the plaintiff's evidence that the water in question was merely surface water, for he stated on cross-examination "it was only surface water that ran into my cellar." Surface water, the books say, is a common enemy against which any land proprietor has a right to fight. He may not obstruct or turn from its natural course water that runs in a regular channel within defined banks, so as to turn it on his neighbor's land to his hurt. But as to mere surface water running down a street, as in this case, in no confined channel, the dominant proprietor may divert it and turn it upon the servient land without liability. *Hoyt v. City of Hudson,* 27 Wis. 656 ; *Hosher v. K. C., St. J. & C. B. R. R. Co.,* 60 Mo. 333 ; *Benson v. C. & A. R. R. Co.,* 78 Mo. 504. This rule is subject to the limitation, in this State at least, that the dominant proprietor has not the right, in diverting surface water, to collect it together by artificial means, as

5. ——— : change of grade: surface water.

into ditches, thereby conducting it in increased volume on
to the servient land, subjecting it to a burden and injury it
would not otherwise suffer. *McCormick v. Railroad Co.*,
70 Mo. 359; *Shane v. Railroad Co.*, 71 Mo. 237; *Benson v.
Railroad Co., supra.*

This question was directly involved in the case of *Imler
v. City of Springfield, supra.* The petition there, as here,
charged that the injury resulted from the wrongful and
negligent manner in which the work was done, whereby
the street was so obstructed in front of plaintiff's house as
to carry off the surface water from the street into his cel-
lar. The court, *inter alia*, page 126, say: "It is assumed
by the plaintiff that it was the duty of the city to keep a
drain or gutter open while the work was being done so as
to prevent the flow of the surface water of the street in
and upon the plaintiff's premises, and that this was negli-
gently permitted by the defendant." It was held that no
such duty devolved on the defendant, citing with approval,
Dillon on Munic. Corp., § 799: "Even where the work of
graduating the street is entered upon, there is not ordinarily,
if ever, any liability to the adjoining owner growing merely
from the non-action of the corporation in not providing
means for keeping surface water from property situate be-
low the established grade of the street." The whole trouble
in the case at bar manifestly grew out of the fact that, in
elevating the grade of the street, the surface flow of the
water along the street came in contact with the mouth of
the pipe connecting plaintiff's cellar with the street, and
thereby ran into the cellar. This is no more than to say
that when defendant altered the grade of its street it be-
came its duty to provide ditches or other conduits for the
surface water flowing along the street, so as to prevent it
from running into plaintiff's cellar—the servient property;
and this, too, when the water found its way into his cellar
by means of an artificial pass-way which he had constructed
from his private property to the public street. This injury
he could easily have prevented by closing up his pipes and

providing other means of escape for water accumulating in his cellar otherwise than from the graded street. When he thus appropriated, uninvited, the public thoroughfare for an easment to drain his cellar upon, he did so subject to the paramount right of the municipality to change the grade of this highway to suit the public convenience, to which it was primarily dedicated. The instruction asked by the defendant touching the flow of surface water should have been given. Those given by the court, of its own motion, were quite unnecessary and misleading. There was no necessity in the first instruction to add the words "provided the damages sustained, if any, were occasioned by his own negligence, and not by the negligence of the defendant." It made the instruction a contradiction in terms. For if the plaintiff could have prevented the injury "at a trifling expense and by reasonable exertion," his complaint is clearly *damnum absque injuria,* no matter who was originally in fault.

The second instruction was bad because it submitted a question of law to the jury. What is proximate and

6. DAMAGES, PROXI-
MATE AND REMOTE

what remote damages, is a question of law for the court. The jury are to find what the facts are and to pass on them; but it is the province of the court to declare the law arising on the facts.

The judgment of the circuit court is reversed and the cause remanded, with directions to proceed in the further trial thereof in accordance with this opinion. All concur.