THOMAS RUTHERFORD, Respondent, v. THE VILLAGE OF HOLLY, Appellant.

*Court of Appeals, April 19, 1887.*

Reversing same case, 36 Hun, 638, Mem.

*Municipal corporations.*—Every change in the natural surface or condition of land, made in the improvement of a street, which to any extent increases the flow of surface water on adjacent premises, does not constitute an actionable injury, and render the municipal corporation liable therefor; but a substantial change in the direction or volume of the surface water, unfavorable to the adjoining owner, must be shown to have resulted from the acts of the corporation.

Action to compel defendant to close a sluice-way, which was claimed to discharge the surface water on an adjoining lot, and thence on plaintiff's lot.

Appeal from an order and judgment of the general term of the supreme court, reversing a judgment entered on report of referee dismissing the complaint, and ordering a new trial before another referee.

*John H. White,* for appellant.

*John Cuneen,* for respondent.

ANDREWS, J.—The fact is uncontroverted that the nat-

ural drainage of the surface water, from the northeasterly side of the hill over which Batavia street was constructed, was through a depression at the foot of the hill, on Batavia street, which extended over the Cary lots and the lot of the plaintiff, from whose lot, prior to 1862, the water was discharged into a gully or watercourse at the northwesterly corner of the plaintiff's tannery. It is also evident that the injury which the plaintiff has sustained to his tannery building, since that date, from the flow of the surface water over his premises, has resulted from the closing up of the outlet by the wall erected by the state, whereby the water was turned from its natural course and thrown against the side of the tannery. But this is not decisive against the right of the plaintiff to maintain the action. It is claimed that the village, by the grading of Batavia street in 1863, and the construction of gutters therein, and of the sluice across Batavia street, has increased and facilitated the collection and discharge of surface water at the lowest point in the street, and that, as a consequence, a greater amount of water than naturally would have collected there has been cast upon the Cary lot, and from there upon the premises of the plaintiff.

The finding of the referee, which is not without evidence to support it, negatives this contention. The referee, in his twentieth finding, in substance finds that the water discharged from the sewer-plate or grate over the sluice on the east side of Batavia street passes onto the plaintiff's premises from the Cary lot, at about the same place that the water has at all times since 1824, when said street was laid out, passed upon the same; that it is the drainage from substantially the same territory, and that, with the same amount of rain fall, " no greater amount or volume of water passes or is discharged onto plaintiff's premises from the sluice (since said Cary's sewer was closed) than did pass or was discharged onto the same at all times since said streets (Batavia and State streets) were laid out.

It is not claimed that the course or amount of surface water which found its way to the foot of the hill before Batavia street was laid out in 1824 was increased by the original construction of the street. The finding, therefore, is equivalent to a finding that the present discharge from the sluice does not exceed the natural drainage, at this point, of the surface water of the adjacent territory. It is insisted, however, that by the construction of the gutter on the north side of Batavia street, and the sluice across the street, the water is made to flow in an artificial channel, and is collected in a body and cast upon the plaintiff's lot. The gutter and sluice were constructed for the protection and improvement of the roadway. It is not improbable that the turnpiking of the street, and the construction of the gutters, diminish to some extent the waste, by soakage and evaporation, and thereby increase somewhat the quantity of water which collects at the sluice, and which is discharged onto the Cary lot, and ultimately on the plaintiff's lot. But it would be quite unreasonable to hold that every change in the natural surface or condition of land, made in the improvement of a street or highway, which to any extent increases the flow of surface water on adjacent premises, constitutes an actionable injury.

The case of Noonan *v.* City of Albany (79 N. Y. 470) and cases of kindred character, establish no such unreasonable and inconvenient doctrine. But it is said that the water, by the acts of the defendant, is thrown upon the plaintiff's lot in a body, whereas before it was dispersed over the surface, and was absorbed, doing comparatively little injury. But there is no finding that the manner of discharge has been materially changed by the acts of the defendant, and such a finding would have been in conflict with some of the evidence, although it might have been warranted by other evidence. It is true that it is found that the water passes onto the plaintiff's lot from the Cary lot substantially in a body. But this finding is made in connection with another

finding, that the water now passes over the surface of the Cary lot at the lowest point, before reaching the plaintiff's lot. . The defendant is not responsible for the manner in which the water flows over the plaintiff's lot, unless it is attributable to some act of the defendant.   This question was controverted on the trial.

The Cary sewer which connected with the sluice, was closed in 1879.   It is found that since that time no water has passed through it, and the water which now reaches the plaintiff's lot first passes through the sluice across the road to the east side thereof, where it is interrupted by the wall or face of the closed Carey sewer, and escapes by " welling up " through the sewer plate or grate, and thence passes over the surface of the Cary lot, and onto the lot of the plaintiff.   The construction of the sluice probably facilitates the passage of the water from the roadway, but it was not shown, or at least it was not shown by uncontradicted evidence, that the construction of the sluice, or the manner in which the water was discharged from it, affected materially the flow across the plaintiff's lot, from what it originally was before the sluice was constructed. It is claimed that the excavations in the street and adjacent lots, made by the state in 1862, for canal purposes changed to some extent the direction of the drainage, and that the village had no right afterwards, by turnpiking the street, to alter, to the prejudice of the plaintiff's lot, the surface of this " new earth " created by the canal authorities, and that, in determining the rights of the parties, this new condition must be regarded in the same way as though it was the original and natural condition of the land.   It is a sufficient answer to this claim that there is no satisfactory evidence that the act of the defendant, in restoring the highway, made any substantial change in the direction or volume of the surface water, unfavorable to the plaintiff.   But at all events we are of opinion that if the defendant, in improving the highway, did not increase the flow of surface water

on the plaintiff's lot beyond what it was prior to the excavation, they committed no wrong to the plaintiff.

Our conclusion, after a careful examination of the case, is adverse to the general term. The general term reversed the judgment of the referee, on the ground that the facts found by him showed an actionable injury, within the case of Noonan v. City of Albany, *supra*. We differ with the general term, on the merits, simply as to the construction of the findings of fact by the referee, which are numerous and complicated.

We think there are no valid exceptions to evidence. The order of the general term should therefore be reversed, and the judgment on the report of the referee affirmed.

All concur.