# Jane B. Underwood v. Henry Waldron and another.

*Disintegration of mortar: Water: Common observation: Matter of science: Opinions: Experts.* The effect of water in disintegrating the mortar of a wall is no more a matter of science than is the effect of a running stream in excavating its banks at its angles; and other persons who have had occasion to observe it, as well as masons, may be competent to express opinions upon it.

*Evidence: Disintegration of mortar: Water: Opinions as to whence it came.* Merely seeing the mortar of a wall disintegrated and destroyed by water, would not alone justify an expression of opinion whence the water came; but if there were other facts indicating that the water came from a particular direction, or must have been applied in a particular way, it would be competent, along with the evidence of the indications themselves, to admit opinions upon them.

*Evidence: Opinions upon facts: Disintegration of mortar.* The opinions, however, in such case should 'be confined simply to the very facts which came under the witness' own observation, and the questions put to elicit such opinions should be framed with that view, and be calculated to exclude the influence of every thing else upon the reply.

*Trespass: Injury to another's property: Wrongful acts: Contributory negligence.* The fact that the plaintiff built her house upon wet and springy soil, and allowed water to accumulate and stand in her cellar, and thereby contributed to the disintegration of the mortar, whereby her walls were destroyed, cannot operate, through the aid or influence of the doctrine of contributory negligence, to shield the defendant from liability for any injury which his wrongful acts may have inflicted.

*Adjacent proprietors: Enjoyment of one's own: Injury to another.* All rules concerning the relative rights and duties of adjacent proprietors must have for their basis the concession to every one of the right to an undisturbed enjoyment of his own, so long as he does not make use of it to the injury or annoyance of others.

*Joint duty: Neglect: Injury.* Where an injury results from the neglect of a duty which is common to both parties alike, neither can maintain an action against the other for such injury, which was the result as much of his own, as of the other's negligence.

*Adjoining proprietors: Towns: Good neighborhood: Negligence.* The respective duties which adjoining proprietors in a town, mutually improving their property, owe to one another, are those only which the requirements of good neighborhood in such a town would impose, *i. e.*, each must use all due care and prudence to protect his neighbor, but is not bound at all events and under all circumstances to protect him; and any injury that may result notwithstanding the observance of proper caution, must be deemed incident to the ownership of town property, and can give no right of action.

*Injury: Accident: Extraordinary circumstances.* Injuries from extraordinary or accidental circumstances for which no one is in fault, must be left to be borne by those on whom they fall.

*Adjoining proprietors: Buildings: Eaves-trough: Water from roof: Injury to adjoining building.* Where two buildings are so situated that the water from the roof of one can only be prevented from flowing against

UNDERWOOD v. WALDRON.

and injuring the other by an eaves-trough attached to both, though the consent and co-operation of the owner of the building receiving the injury may be necessary, yet the duty of affirmative action is on the owner of the other building, and he may not lie by and see the water from his roof destroy his neighbor's wall, and rely for his protection upon the passiveness of his neighbor.

*Heard January 4 and 5. Decided January 11.*

Error to Hillsdale Circuit.

This was an action of trespass on the case brought by plaintiff in error against defendants in error for injuries to the walls of her brick building, caused by water flowing from defendants' roof against it. The trial was by jury, and the verdict for defendants.

*A. Dickerman, Charles S. May* and *G. V. N. Lothrop,* for plaintiff in error.

*E. L. & M. B. Koon* and *George A. Knickerbocker,* for defendants in error.

COOLEY, CH. J:

I. Some of the questions which were put to the witnesses called by the plaintiff, in order to show that the injury to her wall must have been caused by water flowing from defendants' building, and which were ruled out by the circuit judge, seem to have been unobjectionable, and their rejection was error, unless the same witnesses were allowed to answer other questions of corresponding import. This seems to have been the case in some instances. We do not deem it important to examine the several questions in detail, but as the case is to go back for a new trial, it will be sufficient to lay down the general principle which should govern if similar evidence should again be offered.

The case was one of injury to the foundation walls of a building, some portion of which it would seem to have been conceded on both sides must have been caused by water. The plaintiff's case was, that this water was thrown upon her walls by the roof of the defendants' building constructed

33 MICH.—30.

adjoining, with only some four inches between them.    The theory of the defendants seems to have been, that the water which caused the injury was from the wet and springy soil on which the building stood, and from an accumulation that, for a time at least, had been allowed in the plaintiff's cellar. In support of her own view of the case the plaintiff called masons and others, and desired them to testify, from their knowledge, experience and observation, whether the injury to the building was caused by water from the inside, or by water poured from above upon the building on the outside. We say this was what she appeared to seek by the questions proposed, though none of them were put exactly in this form, and some of them were probably objectionable, because comprehending something more which was not properly within the scope of a question calling for mere opinion.

The general inquiry which was proposed to be gone into did not call for opinions on matters of science, but on matters on which any man who has observed the effect of water upon walls might be supposed to be competent to express an opinion.    The effect of water in disintegrating the mortar of a wall is no more a matter of science than is the effect of a running stream in excavating its banks at its angles; the effect is one that any person may have occasion to observe, and that persons in all occupations may be competent to express opinions upon.    One man's observation and experience may make his opinion more valuable than that of another, but this may or may not be because the observation and experience have been connected with some particular employment.

Whether there will be in any particular case any marks or indications such as fairly can justify opinions, is a question which only the facts in that case can determine.    If a man only sees the plaster of a wall disintegrated and destroyed by water, with nothing but the disintegration to indicate from whence the water came, it is obvious there can be no basis for an opinion on that subject, because water coming from any source must or may cause the result he

sees. To ask him, then, his opinion whence the water came, would be unwarranted, because plainly he can have no opinion except such as he must form on facts or opinions communicated by others, or derived from something besides that which he is supposed to be giving an opinion upon. But if in addition to the fact of injury, there are other facts indicating that the water came from a particular direction, or must have been applied in a particular way, it would be unreasonable to exclude opinions upon those indications. True, the indications themselves ought to be proved; and it is quite true also, that the jury are authorized to draw their own deductions from them; but no witness can fully present the appearances as they were before his eyes; and to take his testimony of what he saw, without his opinion, would seldom prove fully satisfactory, and would often be misleading. Indeed, in many cases it is difficult to separate a description of the indications from an opinion upon them; nor is a witness always expected to do so. If a man were to come upon the track of a recent rain or snow storm, he would hardly be stopped in giving an account of it as a witness if he were to say among other things that the storm appeared to have come from a particular direction; because such a storm, as every one knows, must usually, for a time, leave behind it some very conclusive indications of the direction it had taken.

Of course in any such case it should appear that the witness had some basis of observation on which to justify his opinion; but when he has stated the peculiar facts, his opinion may properly be called for. When called for, however, it should be confined to an opinion upon the very facts which have come under his observation, and the questions intended to elicit it ought to be framed with that view, and be calculated to exclude the influence of every thing else upon the reply. A man may find A's wall injured and conclude that B committed the injury, because he knows B and A are enemies. Now, as the law will permit no one to testify to his opinion what B would be likely to do because

of his hatred, neither will it permit a witness, in testifying to an injury A has received, to take this enmity into account in judging whence the injury came. The enmity as an independent fact may in some cases be put before the jury, but the witness must discard it from consideration when testifying. We speak of this with a view to more caution on a new trial, as we think some of the questions put before were carelessly framed, and did not by their terms necessarily exclude from the mind of the witness all considerations but those connected with what he had observed and seen.

II. The circuit judge seems to have thought the doctrine of contributory negligence had or might have an important influence in determining the rights of the parties to this cause. If we do not misapprehend some of his rulings, he intended to give the jury to understand that if the plaintiff was negligent in constructing her building upon wet and springy ground without sufficient foundations, or in allowing water to stand in her cellar, and this negligence contributed with that of defendants' in allowing the water to be thrown from their building upon hers, to injure the latter, then for this injury, because of the contributory fault on her part, she can have no cause of action against them. This, as it appears to us, was the idea intended to be conveyed by some of the instructions given, and in this way he was probably understood by the jury.

It seems hardly necessary to say that this is wholly a misapplication of the law of contributory negligence. It is no negligence, in any proper sense of the term, when one erects a building on foundations not calculated for great endurance. If the building is on his own land, and for his own use, he has a perfect right to erect it so that it shall stand for a single year only, if he shall please to do so. His doing so can give no other person, not endangered by the building, a right to invade his premises and to destroy, or assist in the destruction of the building in a less time. No one can question his right to allow water to stand in his cellar, unless by so doing he creates a public nuisance, or a

UNDERWOOD *v.* WALDRON.

private nuisance to his neighbor. The injury thereby caused is his own concern, and a neighbor has no more right to add to it by a wrongful act of his own than he would have to commit a like injury upon the premises of one who took better care of his buildings. Any other doctrine would detract greatly from the privileges and rights of private ownership, and place owners of property in many cases at the mercy of adjacent proprietors. The poor man whose roof was found going to decay might have it destroyed without remedy by the heedlessness of his neighbor, and the man who had built of wood might be set at defiance by one who had carelessly destroyed his building, because he was negligent in not building of brick or stone. It is impossible to predict where such a doctrine would lead, but it is certain that it would end in destroying the sanctity of private property.

All rules concerning the relative rights and duties of adjacent proprietors must have for their basis the concession to every one of the right to an undisturbed enjoyment of his own, so long as he does not make use of it to the injury or annoyance of others. The durability of his structures concerns no one else, so long as they are not dangerous, and do not become or create nuisances. If, as they stand or are used, they will stand for five years, the wrongful act of another party which causes them to fall in two is as effectual to give a right of action as if the construction had been of the most substantial character. The damages recoverable would manifestly be less, because the injury from the wrongful act would be less; but the right of action would be as complete in the one case as in the other.

What the plaintiff complains of here is, that defendants by their negligence threw water from their building on her wall and injured it. If the injury came from this source, the doctrine of contributory negligence might be applicable provided the plaintiff as well as the defendants had been neglectful of some duty in protecting her building against the water flowing from theirs. If, for instance, the gutter

prepared for carrying the water off had been one which, by agreement or otherwise, it was the joint duty of the adjacent proprietors to keep in repair, neither of them would be suffered to maintain an action against the other for that which was the mutual fault of both. To this extent the rule is perfectly clear, and also perfectly reasonable; but it does not go to the extent of giving one man a right to create a nuisance on his neighbor's land because the neighbor himself does not use his premises to the best advantage.

III. But although the defendants are liable if they have wrongfully thrown water upon plaintiff's building to her injury, we do not think their duty in the premises was coextensive with the claim in that behalf set up on the part of the plaintiff. That claim seems to be that the defendants were bound, at all events and under all circumstances, to keep the water that flowed from their building from falling upon the plaintiff's land.

There is some strong language in the case of *Rylands v. Fletcher, Law R., 1 Exch., 265; S. C., Law R., 3 H. L., 330,* as to the duty of one man to protect another against water flowing from his reservoir; but the case had no analogy to this in its facts, and the governing principle should perhaps be different. The injury in that case was from the bursting of a reservoir into which defendant had gathered water on his grounds; and it was thought that under the peculiar circumstances, which need not here be mentioned, the party should, at his peril, have kept the water from inflicting injury to his neighbors. That was an exceptional case, but this was the ordinary case. Here are adjoining proprietors in a town, mutually improving their property with buildings. This is their right, and the policy of the law favors it. Neither of them is under obligation to permit his lot to remain vacant, because putting up a building will possibly throw water upon his neighbor.

The respective duties of the parties to each other are those which the requirements of good neighborhood in such a town would impose. Each must so use his own as not

to injure his neighbor. But this means only that he shall use all due care and prudence to protect his neighbor; not that he shall at all events and under all circumstances protect him. Any injury that may result notwithstanding the observance of proper caution, must be deemed incident to the ownership of town property, and can give no right of action.

Undoubtedly the defendants were bound to put proper eaves-troughs or gutters upon their building, and to keep them in proper order, if the neglect to do so would be likely to injure the plaintiff. But if they did this, and were guilty of no negligence in that regard, the plaintiff can have no legal complaint against them. Injuries from extraordinary or accidental circumstances for which no one is in fault, must be left to be borne by those on whom they fall.

IV. Of the other points taken by the plaintiff in the brief in this court, we think the first and second not well taken. The question put to the witness Campbell was not wholly foreign to the case, and might with propriety have been allowed, though a judgment would not be reversed for an error—if it was one—so trivial. We are not prepared to say that there was any error in allowing the questions which were put to Sampson. The ninth request* of the defend-

---

*The defendant's 9th request, as modified and given, read as follows, the modifications added by the judge being printed in italics:

"If the jury find from the evidence that the building of defendants had been erected about eighteen years prior to the erection of plaintiff's building, which was placed within a few inches of the eaves of defendants' building, and so close to the same that an eaves-trough to protect the plaintiff's building would *necessarily* have to be fastened to both buildings *in order to prevent the injury complained of,* then the plaintiff was bound to such care and prudence, under the peculiar circumstances of the case, as a reasonable, prudent person would exercise to protect his property; and defendants were entitled to good faith and fair dealing on the part of the plaintiff, and if she neglected to offer to co-operate with defendants in the erection of a proper eaves-trough or to request that such trough be erected, or neglected to do what good faith and fair dealing required of her under the peculiar circumstances of the case, then, *even if you find there was no other proper way to avert the injury complained of, than the erection of a valley attached to both buildings,* the defendants could not be held guilty *merely for a neglect on their part to erect such valley.*"

ants, as modified by the judge and then given, was objectionable in assuming that the plaintiff was to be the moving party in the precautions taken to protect her premises against water from defendants' building. Her consent and coöperation might possibly have been necessary, but the duty of affirmative action was on the defendants. Still, the action of the plaintiff, or her non-action, might have an important bearing on the question of negligence under some circumstances. The question of what is customary in these cases is very important, and juries ought not to apply such strict rules as may lay the foundation for perpetual broils and litigations over unintentional and insignificant injuries.

The judgment must be reversed, with costs of this court, and a new trial ordered.

The other Justices concurred.