JOHN HOFFMAN, Appellant, v. THE CITY OF MUSCATINE..

**Cities and Towns:** DIVERSION OF SERFACE WATER: *Damages.* A city may not divert surface water from its natural course in another direction, so as to flow on a lot owner's land through a drain or channel, in destructive quantities.

EVIDENCE. The quantity and effect of the flow complained or should be shown.

SAME: *Contributory negligence.* Where a city lot is below the· grade of an adjoining street, the owner cannot recover against the city for injury caused by the overflow of the lot by sur- face water turned thereon in slightly increased quantity by improvements of the streets,· especially if the injury would not have occurred had the lot been filled up to the level of the· street.

SAME. Though recovery is ordinarily denied one whose lot is· below grade, he may recover if his injury would have resulted regardless of that situation of the lot.

SAME: *Obstruction by owner* Where the injury to a lot by overflow of surface water is caused by the lot being filled up· by the owner so as to obstruct the natural drainage, and the city, by improving its streets, has not increased the amount of the flow to an appreciaole extent, the owner cannot recover against the city for the injury.

DUTY OF CITIZEN TO CONSTRUCT DRAINS: *Applies to natural water- courses alone.* Under Code, section 600, providing that a city may require the owner of any lot extending into, across, or bordering on any hollow, or ravine which constitutes 'a drain for surface water or a water· course, when grading such lot so as to obstruct the flow of the water, to construct a sufficient . drain or passageway through the lot, the city cannot require a citizen to construct drains to carry off the surface water accumulated by the improvements of its streets, as the law relates to natural water courses, and not to an artificial water course created by the city.

*Appeal from Muscatine District Courl.*—HON. A. J. HOUSE, Judge.

THURSDAY, FEBRUARY 7, 1901.

CYPRESS street, in the defendant city, runs north and south, with a slight angle opposite the south line of plaintiff's land; and Woodland avenue extends to the west, its south line corresponding with that of plaintiff.   Prior to 1893 the surface water flowed in a ditch on the north side of Woodland avenue to the corner, and then to the north along Cypress street about 250 feet, then across that street into plaintiff's pasture.   Surface water gathered in Cypress street to the south, bordering which were hills, flowed north, and was thrown on his land at the angle mentioned, through a box culvert and chute, prior to 1893.   A deep gully or excavation had been washed out in front of plaintiff's house, a part of which was in the street and part in his land.   As we understand it, some of the water from the south flowed down through this gully on his premises, without going through the culvert, while most of it passed through that, washing out a deep hole at the end of the chute.   During the three years following, Cypress street was brought to the established grade, the culvert to the north removed, and the water turned into a diagonal stone culvert constructed in place of the box culvert at the angle, but with the east end 40 feet to the north; and water which formerly flowed down Eleventh street, running parallel with plaintiff's line, 140 feet, to the south, was thrown on a triangular strip of ground lying along Cypress street, with base 30 feet wide at plaintiff's line and tapering to a point on Eleventh street, and thence on plaintiff's land.   In 1895 he brought a portion of his premises up to grade, and the new filling was subsequently washed away.   In this action recovery of damages occasioned by these changes is sought.   A directed verdict was returned, and from a judgment rendered thereon against plaintiff he appeals.—*Affirmed.*

*E. M. Warner* for appellant.

*J. F. Devitt* for appellee.

LADD, J.—The evidence tended to show that in grading Cypress street the defendant constructed a culvert at its intersection with Eleventh street, and thereby diverted a considerable quantity of surface water, which ordinarily flowed to the east over Eleventh street, down Cypress street, either through the diagonal culvert in front of plaintiff's house, or else over the triangular piece of ground forming a part of the street, onto his premises, and also that the water gathered in Woodland avenue, which formerly flowed along a gutter from 2 to 4 feet deep at the west side of Cypress street, and through a culvert into plaintiff's pasture 250 feet north of his south line, was diverted through this diagonal culvert, so that the improvement of the tsreet resulted in not only increasing the quantity of water flowing on his premises, by diverting it from its natural course, but in collecting that which had run thereon in two localities in one stream at the house. His land had not at that time been brought to grade, but the portion about the house and to the south was raised to that of Cypress street in 1895. In doing this no drains were put in by plaintiff, and thereafter the water washed much of the newly-placed earth away; and the plaintiff was ta considerable expense in replacing it, and in protecting his premises from the action of the waters. That the entire lot was not at grade is of little consequence, as the injury resulting from the flow of water over the triangle was in no way connected with the portion not graded. Nor do we regard as fatal to the right of recovery that at the time of the improvement the land had not been raised to the established grade. Recovery against a municipality is denied when the lot is below grade on the ground that the owner could readily have protected himself from injury by filling in the lot. But if, regardless of its situation, injury would have resulted if at grade, the mere fact of it being below grade will not relieve from liability. As said in Dillon Municipal Corporations (3d ed), section 1051,

"The city is not ordinarily, if ever, liable for simply failing to provide culverts or gutters adequate to keep the surface waters off from adjoining lots below grade, particularly if the injury would not have occurred had the lots been filled up so as to have been on a level with the street." Such is the rule prevailing in this state. *Freburg v. City of Davenport,* 63 Iowa, 122; *Knostman & Peterson Furniture Co. v. City of Davenport,* 99 Iowa, 589; *City of Cedar Falls v. Hansen,* 104 Iowa, 189. But suppose a like injury would have resulted to property if at grade; then certainly there should be a recovery if the city is at fault. As a general rule a city is not liable for damages occasioned by the mere grading of its street, if this is done in a prudent manner. *Ellis v. Iowa City,* 29 Iowa, 229; *Russell v. City of Burlington,* 30 Iowa, 267; *Damour v. Lyons City,* 44 Iowa, 282. But to this there is a well-established exception, under which a city will not be permitted to divert a large quantity of surface water from its natural course in another direction, so as to flow on a lot owner's land in destructive quantities, through a drain or channel. *City of Eufala v. Simmons,* 86 Ala. 515 (6 South. Rep. 47); *O'Brien v. City of St. Paul,* 25 Minn. 333; *Pettigrew v. Village of Evansville,* 25 Wis. 223; *City of Aurora v. Reed,* 57 Ill. 29; *Jordan v. City of Benwood,* 42 W. Va. 312 (26 S. E. Rep. 266, 36 L. R. A. 519); *Field v. West Orange Tp.,* 46 N. J. Eq. 183 (2 Atl. Rep. 236); *Seifert v. City of Brooklyn* 101 N. Y. 136 (4 N. E. Rep. 321). The rule is thus stated in Gould, Waters, section 272: "A municipal corporation is liable for flowing water, collected in large quantities in a street or in the gutters of a street, upon the land of a private owner." The appellee, without questioning the law as stated, insists that the plaintiff was required by an ordinance of the city to construct a passageway for the water across his lot when bringing it to grade. Undoubtedly the city is authorized to preserve the natural drainage of the land. See section 18, chapter 116.

Acts Sixteenth General Assembly (sections 699, 952, Code). But it is only when the lot or tract of ground extends into, across, or borders "upon any hollow or ravine which constitutes a drain for surface water, or a water course of any kind," that the lessee or owner may be compelled to construct a passageway for water. The creation of an artificial water course by the city is not contemplated by the statute. Nowhere is the city empowered to require the citizen to construct drains at his own expense to carry of the surface water accumulated by the improvements of the streets, nor is this attempted in the ordinance. To permit the city to concentrate and throw large quantities of surface water on an ungraded lot, and then compel the owner, when bringing to grade, to construct drains through it at his own expense, would impose an intolerable burden, and might in some cases amount to the practical taking of private property without compensation. Before the change of grade the water seems to have flowed down the east side of Cypress street through the deep gully in part of plaintiff's premises. This was undoubtedly such a hollow or ravine. as "constitutes a drain for surface water." In changing culverts the city filled the gully in so far as found in the street, and plaintiff appears to have suffered no inconvenience from the flow of surface water from the south until he brought the southwest portion of his lot to grade. This resulted in filling the portion of the gully on his lot, and raising it about 3 feet above the triangular strip forming a part of the street to the south. This obstructed the natural flow of the water to the north, and it accumulated in this triangle, and finally overflowed his land. The record does not disclose whether this would have been likely to have happened had the water from Eleventh street not been diverted. Indeed, we have no means of knowing the quantity of water thrown down Cypress street by reason of the construction of the culvert at its intersection with Eleventh street, save that drainage from halfway down Eleventh street was

turned back, and some from the south of the intersection.
But as that ordinarily flowing down Cypress street, at least in
part washed out the gully, and a plank drain, 8 by 10 inches,
subsequently constructed at the small outlay of $7.50, car-
ried off the water, but little could have been diverted.
Undoubtedly the city might not have been held re-
sponsible for any damage occasioned by that naturally
flowing on plaintiff's ground, and it was not made to appear
that the increased flow contributed appreciably to the in-
jury.   The record is in the same condition with respect to
the diversion of the water which ordinarily flowed through
the culvert to the north to the diagonal passageway.   Its
quantity or effect is not shown by any evidence, nor does it
appear that this change or the location of the diagonal culvert
would have occasioned any injury had plaintiff's tract of
land been at grade.   No damage having been proven, the
district court directed a verdict for defendant.—AFFIRMED.