### John G. Miller and Mary J. Miller, Copartners as The Miller Harness Co., v. Thomas Wilson.

1. NEGLIGENCE—*Turning Water from Roof onto Adjoining Lot.*— Where a house upon a city lot is so fitted with gutters and down-spouts as to carry off all the water which ordinarily falls upon it, the owner is not guilty of negligence because, during a great downpour of rain, or

cloud burst, the adjoining premises are flooded owing to the incapacity of the gutters and down-spouts to carry off all the water.

**Trespass on the Case.**—Damages from flooding. Error to the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

J. S. WOLFE and M. SAVAGE, attorneys for appellants.

GERE & PHILBRICK, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

The appellants sued the appellee in the Circuit Court of Champaign County, in an action on the case, the declaration being as follows:

" John G. Miller and Mary J. Miller, copartners, doing business under the firm name of The Miller Harness Company, plaintiffs, complain of Thomas Wilson, defendant, in a plea of trespass on the case; for that, whereas, heretofore, to wit, on the first day of January, 1901, at and in the county of Champaign and State of Illinois, the plaintiffs were the owners and occupiers of premises situated on part of lots two and three in block seven, Illinois Central Railroad Company's addition to Urbana, then and now in the city of Champaign, Illinois, and the buildings and appurtenances thereto belonging, and in and upon said premises carried on the business of making harness and other like manufactures and keeping in stock and selling buggies and carriages and the usual parts and appliances belonging to such vehicles, and kept in store, in the basement of the buildings situated on said lots, a large stock of buggies and carriages and other goods belonging thereto, of great value, to wit, $5,000.

And plaintiffs aver that defendant owned and occupied at the time hereinafter mentioned, a large livery barn on lots adjoining to plaintiffs' premises on the south side thereof, having a large roof surface, from which water falling on said roof was permitted to flow off and upon the lots and premises of the plaintiffs above described; and plaintiffs further aver that on, to wit, the second day of July, 1901, the defendant permitted the water from rain falling upon his said roof to flow off said roof upon the lots and premises of the plaintiffs in great quantity, and permitted said flow of water so falling on plaintiffs' premises

to flow into the basement of plaintiffs' building in great quantity, whereby the said basement was flooded with the water so flowing upon and into the premises of plaintiffs to a great depth, to wit, the depth of two feet, and there stand, wet and moisten and soak the buggies, carriages and other property and goods of plaintiffs being therein kept and stored, as aforesaid, and although plaintiffs used all care and diligence to remove and convey away said water to prevent damage to the said property and goods of the plaintiffs therein, to wit, buggies, carriages and harness, were, by means of the water so falling and coming into and upon said premises and coming into said basement, greatly damaged and injured, and rendered unsalable divers buggies, carriages and harness, and greatly injured the same, to the damage of the plaintiffs of $1,000; wherefore they bring suit."

The appellee pleaded not guilty, and the trial by jury resulted in a verdict and judgment in his favor. Appellants moved for a new trial, which was denied. They excepted, and have brought the case to this court by appeal, and insist that the judgment should be reversed upon the alleged grounds that the court erred by admitting improper evidence and in misdirecting the jury by giving improper, refusing proper instructions, and improperly modifying instructions and giving them.

It appears that the appellants own a lot in the city of Champaign, Illinois, which is immediately north of and adjoining to a lot owned by the appellee. The appellants have a house upon their lot, the south wall of which is about six feet from the south line of the lot. On appellee's lot is a barn, the north side of which extends to the north line of his lot. The strip six feet wide between the south side of the appellants' house, and the north side of appellee's barn, is excavated to the depth of about six feet in order to admit light into the basement of the house. The roof of the barn slopes toward the north and has a gutter along the entire lower side that is sufficient to carry all the water which ordinarily falls upon it, to a down-spout six inches in diameter, which conveys it to the ground and away from the lot of appellants.

The appellants sell harness, carriages and buggies, and keep some of them in the basement of their house. The barn of appellee is occupied by a tenant who keeps a livery stable.

On July 2, 1901, about three years after the appellee had purchased his lot, which was at the time occupied by the same tenant, and the situation, as to house, barn, gutter and down-spout being then the same, there came a great downpour of rain, which the witnesses term a "cloud burst," and flooded nearly all of the basements in the city of Champaign.

This "cloud burst" was extraordinary, and the quantity of water which fell in a very short time, exceeded in quantity any that had ever fallen before in the memory of the witnesses. As a result of this "cloud burst" the gutter and down-spout on the barn could not carry off all the water as it fell on the north roof, and much of it ran into the basement of appellants' house and injured their harness, etc., which was stored there.

The declaration as drawn, and the evidence offered by appellants, is based upon the theory that the appellee was absolutely bound to prevent water from the roof of his barn, from flowing upon appellants' premises. Appellee was permitted by the court, over the objections and exceptions of the appellants, to show that he had used reasonable care to provide a gutter and down-spout on his barn which was sufficient to protect the premises of appellants from all the water that ordinarily would fall on the roof thereof, and which might reasonably be anticipated would fall thereon. The court also permitted the appellee, over the objection and exception of the appellants, to show that the rainfall of July 2, 1901, which did the damage in question, was extraordinary and unusual; and the court instructed the jury, over the objection and exception of the appellants, in effect that before the appellants can recover, they must show that the damage caused to their property, as claimed in the declaration, was caused by reason of the negligence of and failure of the appellee to pro-

vide his barn with such gutter and down-spout as would ordinarily and usually carry away all water that might fall upon the roof thereof by all ordinary and expectant rains; and that if the jury believe from the evidence that the appellee did furnish such gutter and down-spout, and used reasonable care to keep the same in reasonably good condition, and that the damage to appellants was by reason of extraordinarily heavy floods, and not by reason of any negligence on the part of the appellee, then and in that case, they should find him not guilty; and refused to instruct at the request of the appellants that, as complained of in their declaration, "appellee is the owner of a livery barn adjoining the premises occupied by the appellants, having a large roof surface, from which water falling thereon was permitted to flow off and upon the premises of the appellants in great quantities, and further alleges that on July 2, 1901, the water thus permitted by the appellee to flow from the roof of his barn on the premises occupied by the appellants, caused the damages complained of. If you believe from a preponderance of the evidence that the appellants have proved these allegations of the declaration, your verdict should be for the appellants; " but modified and gave it as follows:

" The plaintiff complains in his declaration that the defendant is the owner of a livery barn adjoining the premises occupied by plaintiffs, having a large roof surface, from which water falling on said roof was negligently permitted to flow off and upon the premises of the plaintiffs in great quantities; and further alleges that on July 2, 1901, the water thus negligently permitted by defendant to flow from the roof of his barn on the premises occupied by plaintiffs, caused the damage complained of. If you believe from the preponderance of the evidence that the plaintiff has proven these allegations of the declaration and that plaintiff was thereby injured, your verdict should be for the plaintiff."

The appellants objected and excepted to the refusal of the court to give the instruction as requested, and to the modification thereof and the giving of it as modified.

There were other given instructions conforming to the

holdings of the court on the evidence, which were objected to by the appellants, and exceptions are preserved.

The contention of the appellants in this court, as it was in the trial court, is that under the facts shown the appellee is absolutely liable for the damage done their property by the water which flowed upon it from the roof of his barn during the "cloud burst" of July 2, 1901, whether he was or was not negligent, while the appellee insists that he is not liable because he was not negligent, for the reason that he used due care to prevent the water which usually falls upon his roof and which might reasonably be expected to fall thereon, from flowing upon the premises of appellants; and that the water which did flow from his roof upon the premises of appellants on July 2, 1901, was the result of an extraordinary and unusual downpour of rain against which he was not bound to provide because he could not anticipate it.

It is manifest that if the appellants are right in their contention of what the law, applicable to the facts of this case, is, then it follows that the trial court committed reversible error in its rulings on the evidence and instructions; but if the law applicable thereto is as the appellee insists, it is clear that the court ruled correctly.

We think that the appellee would be liable if he had wrongfully permitted the water to fall from the roof of his barn upon the premises of appellants to their injury, yet in order to make it wrongful, he must have been guilty of some negligence; for we have here adjoining proprietors in a city where both are maintaining buildings upon their respective premises, which is their right, and the policy of our law favors it. Neither of them is under obligations to permit his lot to remain vacant, because maintaining a building thereon will possibly throw water upon his neighbor. The respective duties of the parties to each other under the facts and circumstances of this case are those which the requirements of good neighborhood in such a city as theirs would impose.

"Each must use his own so as not to injure his neighbor.

But this means (in the language of Chief Justice Cooley in Underwood v. Waldron, 33 Mich. 232), only that he shall use all due care and prudence to protect his neighbor; not that he shall at all events and under all circumstances protect him. Any injury that may result notwithstanding the observance of proper caution, must be deemed incident to the ownership of town property, and can give no right of action."

As the appellee maintained proper gutters to the eaves of the roof of his barn, connected with a proper downspout to carry off all the water falling upon the roof during the usual and ordinary fall of rains, he is not liable to the appellants for the injury occasioned to their premises or their goods thereon by reason of the water which fell from said roof because of the extraordinary and unusual rainfall of July 2, 1901, which he was not bound to expect would fall, and is not liable for not having provided against.

" Injuries from extraordinary or accidental circumstances for which no one is in fault, must be left to be borne by those on whom they fall."

As we understand it, the rulings of the trial court were in accordance with the holdings in Underwood v. Waldron, 33 Mich. 232; Barry v. Peterson, 48 Mich. 263; Panton v. Halland, 17 Johns. 92; Ohio and Mississippi Ry. Co. v. Thillman, 143 Ill. 127; Meister v. Lang, 28 Ill. App. 624, and The People v. Utica Cement Co., 22 Ill. App. 159.

The evidence supports the verdict and judgment and the trial court having ruled properly on the evidence and instructions, the judgment ought and will be affirmed.

Mr. Presiding Justice WRIGHT having presided in the Circuit Court when this case was tried, took no part in it in this court.