M. J. GINTER v. RECTOR, CHURCH WARDENS AND VESTRYMEN OF ST. MARK'S CHURCH.[1]

May 26, 1905.

Nos. 14,159—(208).[2]

**Discharge of Rain Water.**

    The owners of improved property located adjacent to an adequate sewer or drainage system in a city are required to connect therewith the water gutters and spouts upon their buildings, and not permit the rain water to collect and discharge at a point in a public alley, where, by reason of the volume and force thus attained, it enters adjoining premises, provided such connection with the drainage system can reasonably be made.

Action in the district court for Hennepin county to recover from defendant church corporation $600, damages resulting from the discharge of rain water from the roof of defendant's building upon plaintiff's premises. The case was tried before Pond, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*A. B. Jackson,* for appellant.

*Lancaster & McGee,* for respondent.

LEWIS, J.

The complaint alleges that plaintiff was damaged by defendant in wrongfully and unlawfully permitting the rain falling upon the roof

[1] Reported in 103 N. W. 738.          [2] October, 1904, term.

of its church building and parish house to be collected by means of gutters and discharged through conductors in unusual and destructive quantities against plaintiff's building, through its basement windows, and upon the adjoining ground, so that it formed large pools, and percolated through the soil and area walls into the basement, causing injury to merchandise therein located. The answer alleges that the gutters and conductors upon defendant's church building had been in use for a period of time exceeding fifteen years; that in erecting the building occupied by plaintiff certain basement windows upon the easterly side were provided, and, in order to secure light therefor, excavations were made on defendant's adjoining property, in which area walls were constructed; that the water falling from defendant's premises, if any, entered plaintiff's basement through such windows, and on account of the wrongful and unlawful trespass of plaintiff, or his grantor, in so constructing the same upon defendant's premises; that there were several other buildings located upon the alley in the rear of the premises in question, and that during heavy rainstorms water was collected in the alley to a depth of several inches, rushed past plaintiff's building, and entered the basement through the areas and windows in the rear thereof on a level or below the surface of the alley. It is alleged that from May 1, to October 1, 1902, there occurred in the city of Minneapolis several very severe, extraordinary, and unusual rainstorms, during which time rain fell with such force and in such volume as could not, by the exercise of ordinary prudence, have been anticipated or provided for, and that, if any waters from defendant's premises entered plaintiff's basement, it was due to such unusual and unforeseen circumstances.

The court found that the building occupied by plaintiff was erected in 1901, prior to October 1; that it covered the entire lot, and extended from the sidewalk on Sixth street to the alley in the rear; that a basement extended over the entire distance, fifty feet of the front being two stories high, and the rear one hundred seventy feet one story; that on the easterly side there were constructed three basement windows in the basement wall, forty-two inches in width and thirty-six inches in height, the tops of which windows were just above the level or surface of the ground; that for the purpose of admitting light to the basement an excavation was made opposite each window and an

area wall erected rising two inches above the level of the surface; that in June, 1902, the area wall opposite each of the windows was raised about four inches by the construction of a cement coping, making the total height above the grade about six inches; that the construction of the building with the basement windows in the manner aforesaid was a fact at all times known to the defendant corporation and its officers, as well as to the plaintiff, and no objection was ever made thereto either by plaintiff or defendant; that the lot in question, prior to the time of the erection of the store building, was three to four inches lower than the adjacent premises occupied by defendant's church building, and the natural slope or descent of block No. 222 from the rear of the premises occupied by plaintiff and defendant at the time complained of was towards Seventh street and Hennepin avenue, especially towards the southwesterly portion of the block, and was about twenty-four inches to each one hundred feet; that the premises occupied by defendant church are immediately east of plaintiff's premises, and consist of a tract 158x166 feet, fronting on Sixth street, the rear upon an alley; that the church was erected upon the front three-fourths, more or less, of this tract, and had been so constructed for the period of fifteen years; that in 1901 there was erected on the rear portion of the tract, on a line with the alleyway in the rear of the church, a parish house; that these buildings were equipped with metal gutters, down spouts, and conductors extending to or near the ground; that one-half of the church building faces the east and the other half the west; that half of the parish house roof slopes towards the public alley and the other half slopes towards the north; that all of the gutters and down spouts attached to the eaves of the easterly half of the two roofs covering the parish house facing and sloping southerly and northerly were connected with the city sewer extending along Sixth street, and prior to the time the building occupied by plaintiff was constructed the rain water falling upon the easterly sloping roof of the church and the easterly half of the two roofs of the parish house was by means thereof conducted into the sewer, and the water falling upon the westerly half of the church and parish house was, by means of gutters attached to the eaves and conductors leading to the ground, discharged in large or small amounts, according to the extent of the rain, upon the ground near the southeasterly line

of plaintiff's premises, and by natural descent flowed over and upon the lot now occupied by plaintiff; that defendant's church building is located about thirty-six to seventy-two inches distant from the easterly side of plaintiff's building.

The court further found that May 23 and 24 and August 30, 1902, very heavy rainstorms occurred in the city of Minneapolis, and large quantities of water were carried by the gutters and conductors upon the westerly one-half of the buildings, and by means thereof were transferred and discharged in large and destructive quantities upon the ground at one or more points within close proximity to the easterly wall of plaintiff's building, and more especially within three or four feet of the rear basement window at the southeasterly corner of plaintiff's building; that the water so falling during the May storm flowed over the rear area wall into the basement, and the waters from the August storm worked down beside and through such wall into the basement, causing damage to plaintiff's merchandise to the extent of $600. The court also found that the rain falling upon the roofs of the other buildings situated upon or near the public alley during the time specified, in so far as it was not carried away by the sewer, fell upon or near the alleyway, and, by reason of the natural slope, ran off towards Seventh street and the southwesterly side of the alley. The court further found that prior to 1902 there was built and constructed along Sixth street a public sewer for the use of abutting owners; that it was of proper dimensions, and had general connection with the sewer system of the city; that it was in a receptive working order, suitable and adequate for the purpose intended; that the cost of connecting the conductors above mentioned with the sewer system during the spring or summer of 1902 would not have exceeded the sum of $68; that the making of such connection was entirely feasible, and easily accomplished; and the court specifically found, by its twentieth finding of fact, that had defendant, prior to May 23, 1902, by means of sewer pipes properly laid, connected the westerly half of its church building gutters and down spouts with such city sewer, all of the rain so falling upon the westerly half of defendant's building would have been transferred and discharged into the sewer, and would have flowed away from plaintiff's premises, and no injury would have been caused thereby. The court further specifically found that if, at the

95 M.—2

time specified, no gutters, eave troughs, or down spouts had been erected upon the westerly portion of defendant's building, and the waters had been allowed to drop down from the eaves to the ground, it would have spread out and flowed away from plaintiff's building by the natural decline towards Seventh street and Hennepin avenue, without causing the injuries complained of.

The assignments of error challenge certain of the findings of fact upon the ground that they are not supported by the evidence. It was conclusively shown that the southerly portion of the west transept and the west slope of the south half of the church roof, together with the north slope of the southerly half of the parish house roof, were connected with gutters and two spouts, which discharged their collection of water into the open space between the buildings upon defendant's premises, and that a gutter was constructed under the southerly eaves of the parish house, the east end of which was connected with the sewer, but the west end of the gutter was connected with a spout at the southwesterly corner of the parish house, and the water discharged into the alley. The accompanying plat will assist in explaining the

situation, as it shows the relative positions of the building occupied by plaintiff, the church building with its transepts, and the parish house.

The evidence is ample to support the finding of the court that the waters thus collected and discharged into the disconnected spouts in the open space between the church and the store building ran out through the three-foot space between it and the parish house into the alley, there meeting the water discharged from the spout on the southwesterly corner of the parish house. Several witnesses testified that the waters thus coming together washed out the soil to some extent, creating a pool, described by one of the witnesses as ten feet wide during heavy rains; and that the water so formed could find no other outlet because of the grade, and consequently was raised to such a height that during the May storm it flowed over the area wall and into the grocery store basement, and during the August storm it worked down outside of and through the area wall into the basement; and that the quantity of water so collected was very heavy, and created such pressure as to force its way through the area wall. A plat was introduced, which had been made under the direction of competent engineers, upon which were marked the grades of the premises at various points and the location of other buildings upon the alley and in the vicinity.

From the evidence of the civil engineer and other witnesses the court was justified in finding that the natural lay of the land from defendant's premises sloped towards Seventh street and southwesterly, and from an examination of the plat it appears that there was a depression at the point where the waters met, so that before the water could pass in any direction it would have to rise five or six inches. The grade shows that at a point a few feet east of the southwesterly spout on the parish house there was a rise in the surface of the ground allowing no opportunity for the water to flow east, but from that point the grade fell to the east and south, consequently most of the water falling on the southerly slope of the parish house roof, had the gutter not been placed under the eaves, would have flowed away from plaintiff's premises. As to the water coming through the disconnected spouts upon the southwesterly portion of the church building, while there was no other outlet for the same except into the alley through the narrow space mentioned, yet according to the evidence the court

was justified in holding that the volume was unnecessarily increased by thus collecting the water and discharging it at the points stated. There is evidence to support the finding that the sewer constructed in Sixth street was connected with the sewer system of the city, and was of sufficient capacity to carry away enough water to avoid injury under the circumstances, and that defendant might reasonably have connected the spouts with the sewer.

We are also of the opinion that the finding to the effect that the damage would have been avoided had such connection been made prior to the storms is sustained by the evidence. It was testified by certain witnesses for plaintiff that after the sewer connections were made in October, 1902, no water had collected in a pool at the rear of the parish house nor entered plaintiff's basement. Other testimony to the same effect was given, but stricken out—whether rightly or not we need not consider. It was also conclusively shown that the water falling on the roof of plaintiff's building was during the entire time connected with the sewer system, and that water from the buildings upon the alley and vicinity could not find its way into the basement by reason of the surface grade. And the evidence tends to show that the only water other than that delivered from defendant's premises was such as fell from the clouds into the open space between the two buildings and a small portion of the alley adjacent to the basement window and from the disconnected spout on the parish house. There was a dispute as to whether the gutters all overflowed, and some evidence was submitted by defendant tending to prove that the storms were of such extraordinary character that the sewers would not have taken care of it had the spouts been connected; that a wind was blowing from the south, and some water must have been thus driven into the basement window. All this has been considered, and the conclusion of the trial court must be accepted. Under the evidence the court was justified in finding that sufficient of the rain falling during the storms of May and August would have been carried off by the sewer system had the connection been made, and so have prevented the damage in question.

Having determined that the facts as found by the court are supported by the evidence, we come to the consideration of the legal questions involved. As we understand defendant's position, conceding the facts to be as found by the court, under the law of this state,

an owner has the right to dispose of surface water in any manner incidental to the improvement; that defendant had a right to construct the church and parish house upon its premises, to erect a roof thereon, and it was no concern of defendant where the waters were thereby incidentally discharged; that, if plaintiff's improvement was made subsequently, it was his duty to protect himself. Plaintiff abandoned all claim for damages caused by water entering the basement through the windows on the east side of his building, and confines himself to damages arising from water entering the rear window.

So far as the excavation at the rear of the building and area wall are concerned, the evidence is ample to refute the charge that plaintiff did not use reasonable care to protect his premises. The area wall was constructed in the alley, made of brick and cement, inclosing an excavation about eighteen inches wide and two feet deep, and prior to the May storm was two inches above the surface of the ground. The evidence shows that the water entered the basement on that occasion by flowing over the area wall, which it would not have done except for the fact that defendant caused such volume of water to be concentrated in a depression in the alley that its first natural outlet was over the area wall. Upon discovering the fact that the area wall was not of sufficient height, in June following the May storm plaintiff caused his landlord to raise the area walls of all the windows by adding a four-inch cement coping. This, under the evidence and findings of the court, was a reasonable exercise of care to protect plaintiff's premises. During the August storm the waters collected with such force as to wash out the porous, sandy soil and brick of the area wall, thereby flowing through and under it, entering the basement window in a large stream. Plaintiff cannot be held negligent in failing, under the circumstances, to protect himself by constructing an area wall of sufficient strength and character to withstand the pressure of water collected in the manner stated.

The rule with reference to surface water, as stated in Brown v. Winona & S. W. Ry. Co., 53 Minn. 259, 55 N. W. 123, has been followed in subsequent cases, and is as follows: When an owner improves his land for the purpose for which such land is ordinarily used, doing only what is necessary for that purpose, and being guilty of no negligence in the manner of doing it, he is not liable because, as an

incident of so improving, surface waters accumulate and flow in streams upon the lands of others. This rule was recently applied in the case of Werner v. Popp, 94 Minn. 118, 102 N. W. 366, where it was held that the upper proprietor did not necessarily cause damage to a lower proprietor by digging a ditch which shortened the route of surface waters falling upon his land. In the case of Philips v. Taylor, 93 Minn. 28, 100 N. W. 649, it was stated that the party was required to exercise due care, but not, under all circumstances, to protect his neighbor. In Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, the rule is stated thus: The common-law rule is modified in this state by the rule that the party getting rid of surface water in the improvement of his own premises must so use his own as not unnecessarily or unreasonably to injure his neighbor. In Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123, attention was called to the fact that the doctrine of reasonableness was adopted in Sheehan v. Flynn, supra; Gilfillan v. Schmidt, 64 Minn. 29, 66 N. W. 126; Jungblum v. Minneapolis, N. U. & S. W. Ry. Co., 70 Minn. 153, 72 N. W. 971; and Burnett v. Great Northern Ry. Co., 76 Minn. 461, 79 N. W. 523.

There is no distinction in the principle applicable to cases of surface water in the country, where lands are left largely in their natural state, and in cities, where the land is cut up into small lots for the purpose of improvement; but there may be a vast difference in the application of the principle. It all depends upon the circumstances of the particular case as to what degree of care is required of a party attempting to get rid of surface water upon his premises. It does not follow that because in the country an upper proprietor may be permitted to aid the surface water on his field in its exit through a natural channel upon a lower proprietor, thereby enabling large volumes of water in a rainy period to accumulate, the same thing can be done in a city in thickly settled portions, where improvements are general, and a common drainage system has been provided. Such a system of drainage to carry off surplus water is calculated to avoid the very difficulties which give rise to so much conflict between upper and lower proprietors in the country. The very object of constructing sewers along public streets adjacent to premises is to afford parties making improvements opportunity to connect therewith; and, if such connections can reasonably be made, upon what rule of law has a party

the right to maintain an improvement and refuse to avail himself of this means of getting rid of a common enemy, instead of turning it upon his neighbor's premises?

The doctrine of reasonableness and due care applies to this case, and under the facts found defendant should have availed itself of the means at hand to prevent injury to plaintiff's property. It is immaterial that defendant first made its improvement. It is not seriously contended that defendant did not have notice of the change in conditions caused by the improvement of the adjacent lot. It was open to casual observation, and one of defendant's officers frankly admitted that he was familiar with the situation. Under such circumstances defendant was required to take notice of the effect liable to be occasioned by allowing the waters to run at large. While hardly necessary, it may be observed that defendant cannot take advantage of the fact that the area wall in question was extended about eighteen inches into the alley. If in so constructing the building plaintiff's landlord infringed upon any of the rights surrendered to the public when the alley was dedicated as a highway, those questions are not here involved. Presumably, defendant acquired no right, as against an adjacent proprietor, to use the alley as a sewer to carry off water, other means being reasonably obtainable.

Order affirmed.

JAGGARD, J. (dissenting.)

1. The facts in this case, as found by the trial court, and as set forth in the opinion of the majority of this court, appear to me to contain demonstrable and vital error. The first of the major propositions upon which the plaintiff's case rests in those findings and in that opinion is:

> That the sewer constructed in Sixth street was connected with the sewer system of the city, and was of sufficient capacity to carry away [the] water.

The only evidence in any wise sustaining this is the stipulation of counsel to the effect that for ten or fifteen years past there has been a public sewer on Sixth street opposite this property, and that certain conductors of the church building are connected therewith. On the

contrary, there was testimony that in some storms that sewer system was not sufficient to take off all the water, and that at the corner of Sixth street and Hennepin avenue the water was running three inches deep in the center of Hennepin avenue, because the sewers would not "take it."

The second major proposition of plaintiff's case is even more clearly without support of fact, viz.:

> We are also of the opinion that the finding to the effect that the damage would have been avoided had such connection been made prior to the storms is sustained by the evidence. It was testified by certain witnesses for plaintiff that after the sewer connections were made in October, 1902, no water had collected in a pool at the rear of the parish house nor entered plaintiff's basement.

The principal of three fatal objections to these propositions is that this testimony of the plaintiff and all of the same character was stricken out by the trial court. The record shows that the plaintiff's counsel, like good lawyers, realized that they must prove this part of their case, and to that end introduced testimony of a number of witnesses tending to show this effect of the subsequent connection of church conductors with the sewers. To this class of testimony the defendant at a number of places duly objected. The court made its findings without disposing of these objections. On the defendant's motion for corrected findings it ruled on this class of testimony, sustained the objection, and excluded the evidence; essentially because—and this is the second fatal objection—it is the well-settled rule in this, and practically in all other, states that subsequent acts of a defendant in repairing or changing a situation which had previously wrought damage "are not to be admitted under any circumstances." Morse v. Minneapolis & St. L. Ry. Co., 30 Minn. 465, 16 N. W. 358. In his memorandum on this point the trial judge said:

> The witness was allowed to answer with the understanding on the part of the court, as I now distinctly recollect, that that class of testimony would be received and its materiality argued by counsel, and then be passed upon by the court. * * * It fol-

lows from this that the same disposition of this testimony (viz.,. that it be stricken from the record) as in the former instances. should be made, and a settled case here amended accordingly.

It would seem to be immaterial that the defendant may not have raised the objection to every question on this subject asked every witness. His objection and exception covered this class of testimony, and in good faith the ruling of the court must be held to have excluded it all. The testimony, however, has to my mind no significance —and this is the third fatal objection to it—because the photographs. received in evidence and other testimony conclusively show that the situation had changed in material respects.

The third major proposition of fact in which error is susceptible of almost mathematical demonstration is this: That a substantial part of the water doing the damage came from plaintiff's own premises. The spout on the rear of plaintiff's building drained into the sewer surface water from thirty-nine hundred square feet of roof surface. The plaintiff himself testified that the eavetroughs overflowed from a part of defendant's roofs, which drained an area of eighteen hundred square feet. The eavetroughs and conductors on this part of defendant's premises are larger than those on the plaintiff's own premises next to the alley. It follows that the eaves on the plaintiff's. premises were not sufficient to carry off the water. There is abundant testimony in addition to photographs to that effect. The trial court recognizes this:

> It is true that in heavy rains the eavetroughs and conductors. attached to the rear of the plaintiff's building have not at all times conducted and carried off into the sewer all the water falling upon its roofs, and hence there has been at times more or less of an overflow from these roofs.

The overflowing eaves of plaintiff's building for at least one-fourth of its width clearly must have gone into this area, for the area. wall began about three feet from the easterly end of the building and the windows were forty-two inches wide. In obedience to the law of gravitation, the water from the plaintiff's building must have joined the water which fell into the area. It is only as to the remaining

three-fourths of defendant's overflow to which the court's argument could possibly apply, viz., that the slope of the alley would have carried these overflowing waters away from the area towards Seventh street. But the testimony of the plaintiff's own engineer shows that the grade at the spout was 99.9 while the grade at the center of the space between plaintiff's and defendant's buildings was 99.67. The spout was more than twelve feet away from this space. Accordingly it appears that at least one-half of the overflow from the plaintiff's own building went into the area. The wind was blowing at a tremendous rate, driving the water falling from plaintiff's building directly toward the area.

In vain one looks to find either in the memoranda of the trial court or in the opinion in this case any satisfactory disposition of the defendant's further contention that the testimony conclusively shows the plaintiff to have been the author of his own harm to an indeterminate extent. Originally he claimed damages for goods destroyed by water coming through area windows which plaintiff had made on defendant's own land without defendant's consent. His audacity abated. No claim is now made for the recovery on this ground. The court, finding for the plaintiff, was faced with the task of showing that the testimony did not mix these damages up. There has been no attempt to justify the conclusion reached so far as this vital question is concerned. The dissenting opinion, however, for sake of harmony is not based on any assertion as to what the record discloses on this point, but will rest only upon the facts involved in the opinion of the majority.

The fourth major proposition of fact in this case concerns the exceptional violent character of the storms which the majority opinion has not denied, but ignored. The testimony on this point shows that in the May storm at one time the rain was falling at the rate of nearly six inches per hour, and .60 of an inch in ten minutes. A gale of wind blew forty-two miles per hour from the south. In the August storm the rainfall was 2.14 inches; 1.92 falling within forty-five minutes. The wind was again blowing hard from the south.

2. So far as the law of the case is concerned, I am at right angles with the majority of the court. The opinion proceeds:

> The very object of constructing sewers along public streets adjacent to premises is to afford parties making improvements

opportunity to connect therewith, and, if such connections can reasonably be made, upon what rule of law has a party the right to maintain an improvement and refuse to avail himself of this means of getting rid of a common enemy, instead of turning it upon his neighbor's premises?

The answer is simple: Upon every relevant and recorded rule of law which existed before the majority opinion was written.

(1) On the one hand, the authorities which the court cite in part sustain in a negative way only, and in part deny, its conclusions. (a) They consist principally of the Sheehan v. Flynn group of cases, which lay down this vague generalization, namely: "A party must so use his own as to not unreasonably or unnecessarily injure his neighbor." This sounds well, but works confusion. 3 Farnham, W. & W. C. § 889c, p. 2598. It purports much, but prescribes little. On its face it appears to be just, but it may become with undisturbed consistency the basis of as many directly opposite conclusions from the same state of facts as there may happen to be advocates opposing or proposing. In this case it would justify with equal aptness the affirmance or reversal of the trial court. But it cannot be determined from within the four corners of the rule how this case should be decided. (b) Three specific cases are cited as authority for the conclusions here reached. Of these Werner v. Popp, so far as the facts are concerned, is very similar to the case at bar. There the owner of land on which a considerable body of surface water gathered at times dug a trench on his own land through which that water passed to a ditch on an ordinary highway, and then through a culvert by a dry run into a depression on the plaintiff's land. It is to be observed that this decision, which, in effect, carries the common enemy theory to a conclusion extreme, if not unjust, was reached by a majority of the court only. The facts here are much stronger for the defendant. Not only did the defendant here turn less than one-third of the water which naturally flowed onto defendant's premises, but the natural use of his own premises cast such water on a public alley connected with city system of drainage, and therefore like a case of draining rural surface water on a road having a general state ditch system. Moreover, in the Popp case, the waters ran onto plaintiff's premises through a natural channel; here they got in through the plain-

tiff's own act in digging an excavation into an alley and in insufficiently protecting his premises against the water entering through that area. The flexibility and danger of the rule in the Sheehan v. Flynn case is well illustrated by its citation as authority for holding the defendant harmless there for an obvious trespass, and here liable for breach of duty to insure against damage. The second specific case—Philips v. Taylor—is much more nearly in point in logic. Water was carried from the roof of a warehouse by conductors to a drain, thence ran through a culvert to sandy soil, where ordinarily it was absorbed. By an extraordinary and unusual storm the premises of both parties were flooded. So the waters here were drained into an alley, which was ordinarily porous enough to absorb them. Because of the phenomenal nature of the storm in both cases the premises of both plaintiff and defendant were damaged. The rule in both cases should be as Judge Brown said in the Philips case, that the damage must be deemed incidental to the use and ownership of private property. And see Miller v. Wilson, 104 Ill. App. 556. (For statement of similar facts, see page 558.) The third specific case—Brown v. Winona & Southwestern Ry. Co.—has little direct significance. What is quoted from it is fairly inconsistent with the proposition it is cited to sustain.

(2) On the other hand, the authorities which the court does not cite, but to most of which its attention has been called, are affirmatively inconsistent with its conclusion. (a) The only case upon the duty of draining surface water into a sewer denies the existence of such legal duty. Sentner v. Tees, 132 Pa. St. 216, 18 Atl. 1114, approved in Hall v. Rising (Ala.) 37 South. 586. (b) The overwhelming weight of authority is to the effect that in a city adjoining property owners have a right to drain surface water onto public streets and alleys, subject to municipal control. In Phillips v. Waterhouse, 69 Iowa, 199, 28 N. W. 539, defendant drained surface water from his building to an alley in its rear, whence it flowed to the plaintiff's premises below grade. In holding that the defendant was not liable to consequent damage the court said: "The [owner of a lot] had the undoubted right to erect a building covering his whole lot. Water falling thereon must be discharged therefrom; and, subject to municipal control, the [owner] had the right to discharge such water on the street or

alley. He had precisely the same right in this respect as he had the right to walk on the street or alley. He had the further right to so construct the building as to cause the water to flow and be discharged at one or more places. Of necessity this must be so." This case was expressly followed in Hall v. Rising, 141 Ala. 431, 37 South. 587. And see Young v. Leedom, 67 Pa. St. 351; Nelson v. Fehd, 104 Ill. App. 114; Vanderwiele v. Taylor, 65 N. Y. 341.

The same principles of liability and immunity on this immediate subject which apply to individuals apply also to cities. Flagg v. City, 13 Gray, 601; Parks v. City, 10 Gray, 28; Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123; Gilman v. Laconia, 55 N. H. 130; Hoyt v. City, 27 Wis. 656. The city has a right to construct and maintain its streets, alleys, and sewers so as to solve municipal problems, including this one of surface water, according to its own judgment; and if in grading or maintaining a street it casts such water on the premises of an adjoining owner, he cannot recover damages therefor. Such owner may protect himself by building an adequate embankment, by filling his lot high enough to prevent overflow, by constructing a sufficient building, or otherwise so as in actual fact to keep out the offending waters. In Alden v. City of Minneapolis, 24 Minn. 254, Cornell, J., said: "This he could lawfully have done, as he possessed the common-law right of use and enjoyment in respect to his lot as fully and to the same extent as the city did in respect to its streets. Each had the right to use and improve for any legitimate purpose and in such manner as would protect against the incursion or accumulation of mere surface waters." And see Lee v. City of Minneapolis, 22 Minn. 13; St. Paul & D. R. Co. v. City of Duluth, 56 Minn. 494, 58 N. W. 159; Stewart v. City, 79 Mo. 603; Morris v. City, 67 Iowa, 343, 25 N. W. 274; Hoffman v. City, 113 Iowa, 332, 85 N. W. 17; Simpson v. City, 34 Iowa, 568; City v. Lansil, 51 Me. 521.

(3) The plaintiff would have been fully justified in protecting himself against all incursions of surface water. Township of Blakely v. Devine, 36 Minn. 53, 59 N. W. 342; Middlesex v. McCue, 149 Mass. 103, 21 N. E. 230. He was the judge as well as the author of his own devices. Neither his success nor his failure, nor his diligence nor negligence, can alone be made the basis of his neighbor's liabil-

ity. As to the design of, selection of materials for, and the construction of his area wall and its coping, his neighbor had no choice and no voice. The latter is not responsible for the consequences of the plaintiff's own instrumentalities. If the plaintiff kept the surface water out, he would have suffered no damage; if he did not, he ought to endure the harm he has not prevented. Mayor v. Dannenberg (Ga.) 39 S. E. 446. And see City of Guthrie v. Mix (Okl.) 49 Pac. 917. The mere fact that he may not have been negligent in constructing his area wall does not make the defendant his insurer against damage by surface water. Defendant took no better care of himself than of his neighbor, and took the same care of both, which was shown by the testimony to have been usual and customary in that neighborhood.

(4) The fact that the plaintiff's own overflowing eaves contributed largely, although to an indeterminate extent, to the damage for which he seeks recovery, puts him conclusively out of court upon the record in this case. Sloggy v. Dilworth, 38 Minn. 179, 185, 36 N. W. 451.

Since this dissent was filed, the majority opinion was changed in this respect, viz., so as to rest the proposition of fact that sewer connections would have prevented damage not on plaintiff's testimony, as appeared in the original opinion, but on the other testimony. "All testimony of that class" was, however, stricken out by the trial court.